UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM NICHOLSON,

Petitioner,

v.

CASE NO. 2:12-CV-10708
HONORABLE GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CATHERINE BAUMAN,

Respondent.
_______________________________/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

William Nicholson, ("petitioner"), confined at the Alger Maximum Correctional Facility in Alger, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for armed robbery, M.CL.A. 750.529; carjacking, M.C.L.A. 750.29a; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted of the above offenses following a bench trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The victim testified that he was rear-ended when he slowed down for a traffic light. The victim pulled over to the side of the road. The Dodge Durango that had rear-ended him pulled over in front of him. There appeared to be three occupants in the Durango. The victim got out of his vehicle, which was still running. Two men from the Durango ran up to him. One of the men carried a black semi-automatic gun. The individual with the gun told the victim to "give me what you got" and the other individual told the victim they were taking the car. The man with the gun was standing approximately three feet away from the victim. The victim gave them the money he had in his pocket and ran. The man with the gun was wearing all black and had on a hoodie. Still, the victim could see his face clearly. The victim believed the whole experience lasted ten seconds.
>
> The victim viewed photo arrays the day after the carjacking. Defendant was not in custody at the time. The victim could not make a positive identification but indicated that two of the individuals looked like the perpetrator. The victim was asked to come back to the police station a few days later to view a live lineup. An attorney was present and did not object to the composition of the lineup. There was conflicting evidence regarding whether the officers told the victim that the suspect was in the lineup. The officers told the victim that the individuals could speak and all seven individuals were asked to step forward and speak. The victim then narrowed it down to two people. Those two individuals stepped forward again and said something. The victim then made a positive identification of defendant, noting the tattoo on his neck. The victim admitted that he did not tell the officers about the tattoo when he was initially interviewed. The victim also admitted that he may have told police that the robber was five eight or five ten, but the robber was actually shorter.

*People v. Nicholson,* No. 291851, 2010 WL 2925776, * 1 (Mich.Ct.App. July 27, 2010).

Petitioner's conviction was affirmed on appeal. *Id; lv. den.* 488 Mich. 1035; 793 N.W. 2d 233 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Whether there was sufficient evidence to support his conviction.

II. Whether the eyewitness identification was improperly suggestive.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court

decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claim, this Court must remember that under the federal Constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

**III. Discussion**

The Court will consider petitioner's two claims together for judicial economy. In his first claim, petitioner contends that there was insufficient evidence to convict him of the charges because the victim's identification was impermissibly suggestive and not credible. In his second claim, petitioner contends that the victim's in-court identification should have been suppressed because it was the result of a suggestive pre-trial lineup. For purposes of judicial clarity and logic, the Court will discuss petitioner's second claim first.

In his second claim, petitioner contends that the pre-trial identification procedure was unduly suggestive for several reasons. First, petitioner points to the fact that the victim failed to identify petitioner at a photographic lineup that was conducted the day after the robbery. Petitioner further notes that the victim was told by the police that the suspect was present in the live line-up. Petitioner notes that the victim did not immediately identify petitioner at the live lineup, but only identified petitioner after initially picking petitioner and another person out of the lineup and only after asking the two men to repeat the words spoken by the robber. Petitioner also argues that the pre-trial identification was unreliable because the victim told the police he was only 90 percent certain of his identification of

petitioner. Petitioner further claims that the victim's in-court identification was somehow tainted by his repeated pre-trial exposures to petitioner. Petitioner lastly claims that the lineup identification was unreliable because there were discrepancies between petitioner's physical appearance and the description given by the victim to the police of his assailant.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). However, to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972). Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Id*. at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240, n. 31(1967). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there

is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner is not entitled to habeas relief because he has failed to show that the victim's in-court identification was the result of suggestive procedures.

First, the mere fact that the victim failed to identify petitioner at the initial photographic lineup and his hesitancy to pick out petitioner at the live lineup did not require the suppression of the victim's in-court identification of petitioner. An earlier failure to identify a defendant, or even a positive identification of a different suspect, does not require the exclusion of an in-court or pretrial identification, if the identification is otherwise reliable. See *Howard v. Bouchard,* 405 F. 3d 459, 484 (6th Cir. 2005)(collecting cases). The victim's failure to previously identify petitioner at the photographic identification and his initial inability to identify petitioner at the live lineup went to the weight, not the admissibility, of his in-court identification. *Id.*

Petitioner next claims that the victim's identification was tainted because the police told him that the suspect was in the live line-up.[1] A pretrial line-up is not rendered impermissibly suggestive simply because a witness knows that the suspects were in custody when the line-ups were conducted. *See United States v. Bowman,* 215 F. 3d 951, 966 (9th Cir. 2000); *See also United States v. Carter,* 756 F. 2d 310, 313 (3rd Cir. 1985)(while statement by security officer to witness that there would be suspect in lineup

---

[1] There was some dispute over whether the victim was actually informed by the police that petitioner was in the live lineup. At the preliminary examination, the victim testified that he was told that the person who robbed him was participating in the lineup but at trial he denied being told that petitioner was included in the lineup.

she was about to view was dangerously suggestive when combined with one person show up, that was not true in case of a fair lineup); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004)(same). As the Ninth Circuit has noted, "[i]t stands to reason that there *is* a suspect at the lineup stage." *Bowman,* 215 F.3d at 966 (emphasis original).

Next, the fact that the victim only identified petitioner after hearing his voice did not render the identification at the live lineup unreliable. "The identification of the voice of a person suspected of a crime as the voice of a suspected criminal is admissible evidence." *Alder v. Burt,* 240 F. Supp. 2d 651, 674 (E.D. Mich. 2003)(citing *Stovall v. Denno*, 388 U.S. 293, 295 (1967)). Hence, "[P]ersons in a lineup can be required to speak words or phrases supposedly uttered by the culprit." *See Swicegood v. State of Ala.,* 577 F. 2d 1322, 1327 (5th Cir. 1978)(citing *Wade,* 388 U.S. at 222-23). Requiring petitioner and the other participants in the lineup to speak the words uttered by the perpetrator in this case was not unduly suggestive and did not deprive petitioner of his rights to due process. *See e.g. U.S. v. Beard.* 381 F. 2d 325, 326-28 (6th Cir. 1967).

Petitioner next contends that the victim's identification of him at the live lineup was unreliable because the victim stated that he was only 90 percent certain that petitioner was his assailant. Contrary to petitioner's argument, the victim's indication that he was 90 percent sure of his pre-trial identification of petitioner establishes that the victim's identification was sufficiently reliable to pass constitutional muster. *See U.S. v. McComb,* 249 Fed. Appx. 429, 440-41 (6th Cir. 2007).

Petitioner next argues that the victim's in-court identification of him as the robber was tainted because the victim had been repeatedly exposed to petitioner in several pre-trial lineups. The mere fact that the victim was exposed to successive identification

procedures of petitioner did not render his identification of him unreliable. *See Williams v. Lavigne,* 209 Fed. Appx. 506, 508 (6th Cir. 2006)(Identification procedure, during which witness was shown several lineups and photo arrays, all of which contained defendant's picture, was not unduly suggestive).

Finally, assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. The victim testified that it was still light out at the time of the robbery. The victim was face to face with petitioner and stood no more than three feet away from him. Although petitioner was wearing a hood, the victim testified that he had no problems seeing petitioner's face. The victim positively identified petitioner at the preliminary examination. The victim at trial testified that he had no doubt that petitioner was his assailant. (Tr. 3/24/2009, pp. 13-14; 17-18, 29-30). These factors all support the trial court's finding that an independent basis existed for the victim's in-court identification of petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001.) Moreover, the mere fact that the victim looked at petitioner for only ten seconds would not render his in-court identification unreliable, in light of the fact that the victim was able to get an unobstructed view of petitioner and identified him with a high degree of certainty at the live lineup, at the preliminary examination two weeks after the robbery, and subsequently at trial. *See Brown v. Tracy,* 299 F. Supp. 2d 77, 80 (E.D. N.Y. 2004)(state court's determination that robbery victim's in-court identification of petitioner was reliable, despite suggestive identification procedures, was not contrary to, and did not represent an unreasonable application of clearly established federal law, where the victim had an unobstructed, well-illuminated view of his assailant during a robbery that lasted for

approximately 15 seconds, and the victim identified the petitioner as the assailant with a high degree of certainty two months after the robbery).

Moreover, with respect to the victim's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F.3d at 473; *See also United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (finding heightened degree of attention where witness spoke with robber and studied his features while looking for an opportunity to escape); *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun). In light of the fact that the victim was being robbed at gunpoint, it was not unreasonable for the state courts to conclude that the victim paid a high degree of attention to his assailant.

Moreover, even if there were slight discrepancies between the victim's initial description of his assailant and petitioner's appearance, this would be insufficient to render the in-court identification suspect, in light of the fact that the victim was able to get a good look at petitioner and testified that he was certain in his identification of petitioner as being the suspect. *See United States v. Hill,* 967 F. 2d at 232-33 (in-court identification of alleged bank robber held admissible despite five years between incident and trial and slight inaccuracies in witness' description of robber, where witness' view of robber was brightly lit and unobstructed and she showed high degree of certainty in her in-court identification).

Finally, the reliability of the victim's in-court identification is supported by the fact that he "testified without equivocation" that petitioner was his assailant. *Howard,* 405 F. 3d at 473. Petitioner is not entitled to habeas relief on his suggestive identification claim.

In his first claim, petitioner contends that there was insufficient evidence to convict him of the crimes because the eyewitness identification was suggestive.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original). The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court

conviction, “the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality.” *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003); *See also Butzman v. U.S.,* 205 F.2d 343, 349 (6th Cir. 1953)(in a bench trial, credibility of witnesses is a question for trial judge). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).

In the present case, the victim unequivocally identified petitioner at trial as being the person who robbed him at gunpoint and stole his car. This evidence was sufficient to support petitioner’s convictions for armed robbery, carjacking, and possession of a firearm in the commission of a felony. *See Brown v. Burt,* 65 Fed.Appx. 939, 944 (6th Cir. 2003).

To the extent that petitioner challenges the credibility of the victim, he would not be entitled to habeas relief. Attacks on witness credibility are simply challenges to the quality of the prosecution’s evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient

evidence to convict therefore defeats a petitioner's claim. *Id.* Moreover, when evidence in a bench trial "consists largely of contradictory oral evidence, due regard must be accorded the trial court's opportunity to judge the credibility of witnesses." *Bryan v. Government of Virgin Islands,* 150 F.Supp.2d 821, 827 (D. Virgin Islands 2001). In this case, the trial court judge chose to credit the victim's testimony and not to believe petitioner's version of events. This Court must defer to the trial court's finding beyond a reasonable doubt that the victim was credible. *Id.* at 828. Petitioner is not entitled to habeas relief on his sufficiency of evidence claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal

constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: November 1, 2012

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record and on William Nicholson #725463, Alger Maximum Correctional Facility, Industrial Park Drive, P. O. Box 600, Munising, MI 49862, on November 1, 2012, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk